HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DWAYNE COOPER,

    Plaintiff,

v.

MILLIMAN, INC.,

    Defendant.

Case No. 2:23-cv-00522-RAJ

**ORDER**

## I. INTRODUCTION

This matter is before the Court on Plaintiff Dwayne Cooper's ("Plaintiff" or "Cooper") motion to amend the complaint and motion to modify the scheduling order and extend all remaining deadlines. Dkt. ## 15, 16. For the reasons below, the Court **DENIES** the motion to amend the complaint and **GRANTS in part** the motion to modify the scheduling order.

## II. BACKGROUND

**a.) Plaintiff's Complaint**

In February 2020, Plaintiff's wife, Laura, died of kidney cancer. Dkt. # 1 (Compl.) ¶ 10. In the summer of 2021, Plaintiff applied for life insurance with non-party Lumico. *Id.* ¶ 13. Lumico approved Plaintiff's life insurance application, and he began submitting

ORDER – 1

payments in August 2021. *Id.* ¶ 14. In February 2023, Plaintiff received an "adverse action notice" from Lumico that stated that Plaintiff failed to disclose that he had received treatment for a "malignant neoplasm of the right kidney." *Id.* ¶ 18. Lumico cancelled Plaintiff's life insurance policy and provided him a refund check in the amount of $1,424.43. *Id.* ¶¶ 17, 20. Plaintiff states that he has never received treatment for a malignant neoplasm of his right kidney. *Id.* ¶ 19.

Lumico indicated that it received the information regarding Plaintiff's supposed kidney treatment from a consumer report provided by Defendant Milliman Inc. ("Milliman"). *Id.* ¶ 22. Plaintiff called Lumico and was instructed to request a copy of his consumer report and dispute the inaccuracy. *Id.* ¶ 24. Plaintiff then contacted Milliman and left a voice message to request a copy of the report. *Id.* ¶ 26. On February 20, 2023, Milliman sent Cooper a copy of his report. *Id.* ¶ 27. The report appeared to mix Plaintiff's late wife's medical records with his own medical history. *Id.* ¶ 28. Specifically, Plaintiff alleges that three particular entries (including an entry concerning a "malignant neoplasm of right kidney") from January 2020 were wrongly included on Milliman's report. *Id.* ¶ 32(a)-(c).

Around February 21, 2023, Plaintiff called Milliman to dispute the inaccurate report that included his late wife's medical records, and he left a voice message explaining the problem. *Id.* ¶¶ 42, 43. Plaintiff claims that Milliman did not call him back and instead sent a "belated" email that apparently asked Plaintiff to obtain more medical records. *Id.* ¶ 45. Plaintiff says that in March 2023, he requested copies of his consumer report from Trans Union, Equifax, and Experian, and confirmed that the information included on those reports was accurate. *Id.* ¶ 47- 49. Because of this, Plaintiff believes that the inaccurate information provided by Milliman was the sole basis for the cancellation of his life insurance policy. *Id.* ¶ 50.

On April 5, 2023, Plaintiff filed his lawsuit against Milliman alleging that Milliman violated a provision of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §

ORDER – 2

1681e(b), by (1) failing to establish, maintain, and/or follow reasonable procedures to ensure the maximum possible accuracy in the preparation and maintenance of his consumer report and file, and inaccurately reporting at least one other consumer's medical records on his file; and (2) by failing to perform a reasonable reinvestigation and remove the inaccurate information within 30 days of receiving Plaintiff's dispute. *Id.* ¶¶ 89-104.

### b.) The Status of Discovery

The parties filed their Joint Status Report on May 31, 2023, Dkt. # 9, and on June 6, this Court entered the case scheduling order. Dkt. # 10. Plaintiff served written discovery requests on June 5, and Milliman served its responses on July 5. Dkt. # 16 at 2; Dkt. # 17 at 3. Milliman served written discovery requests on June 5, and Plaintiff served his responses on July 5. Dkt. # 16 at 2. On September 6, Plaintiff's counsel asked Milliman for available dates for a deposition, and the 30(b)(6) deposition of Milliman was noticed for October 31, 2023. *Id.* at 2-3; Dkt. # 18, Ex. D. Plaintiff was deposed on September 22, 2023. *Id.*

On September 27, Plaintiff's counsel informed Milliman that Plaintiff intended to request a 30-to-60 day extension of the case scheduling order to accommodate multiple depositions and expert designations. Dkt. # 16, Ex. 1. On October 10, Plaintiff's counsel followed up on the email, informing Milliman that Plaintiff would seek to add Evernorth Intelligence Solutions ("Evernorth") as a Defendant. Dkt. # 16, Ex. 3.

Under the parties' scheduling order, the deadline for joining parties was August 30 and the deadline to amend pleadings was November 1. Dkt. # 10. Plaintiff now seeks leave to file an amended complaint, Dkt. # 15, and requests that this Court modify the scheduling order and extend all remaining deadlines by 90 days. Dkt. # 16. The parties were unable to come to agreement, and Milliman opposes Plaintiff's requests. Dkt. # 17.

Here, the Court must note Plaintiff's varying, and sometimes contradictory, characterizations of the status of the case. For example, in his October 16 motion for

ORDER – 3

leave to amend the complaint, Plaintiff states that Evernorth may be added as a defendant and participate in the case "without extending the current deadlines or amending the scheduling order." Dkt. # 15 at 4. Because of this, Plaintiff argues, to amend the complaint to add Evernorth would not cause undue prejudice to Milliman or create undue delay in the case. *Id.* However, only two days later, Plaintiff sought a ninety (90) day extension of all remaining case deadlines, arguing that it is necessary to allow Plaintiff to conduct discovery on proposed-Defendant Evernorth. *Compare* Dkt. # 15 *and* Dkt. # 16. That said, the Court now considers Plaintiff's requests.

### III.  DISCUSSION

#### A.  Motion for Leave to Amend Complaint (Dkt. # 15)

Plaintiff seeks leave to amend his original complaint and file a First Amended Complaint that adds Evernorth as a Defendant. Dkt. # 15, Ex. A (Proposed Amended Complaint). Further, Plaintiff seeks to add two more causes of action for a violation of 15 U.S.C. § 1681(i) against Milliman and a negligence claim against Evernorth. *Id.* Plaintiff intends to allege that both Milliman and Evernorth are "consumer reporting agencies" ("CRA") under the FCRA. *Id.* Milliman concedes that it is a CRA. Dkt. # 17 at 2.

Plaintiff states that the discovery produced by Milliman indicates that Evernorth is the source of at least some of the inaccurate data included in Milliman's report. Dkt. # 15 at 2. According to Plaintiff, "the same set of facts give rise to Evernorth's liability as those that give rise to Defendant Milliman's liability," and as such, it would save the time and resources of the parties and this Court were Evernorth to be joined as a defendant. *Id.* at 4-5. Plaintiff contends that if Evernorth is added as a defendant at this time, it "can participate in the process without extending the current deadlines or amending the scheduling order." *Id.* at 4. As to the timing of the request, Plaintiff states that he only learned that Evernorth was the potential source of some of the inaccurate medical records based on a mid-July document production by Milliman. Dkt. # 16 at 4. Further, at

ORDER – 4

1  Milliman's deposition of Plaintiff Cooper on September 22, Plaintiff was questioned
2  using data provided by Evernorth. *Id.* These revelations precipitated Plaintiff's requests
3  for leave to amend the complaint and for an extension of the parties' case schedule. *Id.*

4  Milliman argues that Plaintiff has failed to demonstrate diligence in seeking to
5  amend his complaint prior to the August 30 deadline to join parties because Milliman
6  first identified Evernorth as a third-party data source on June 8, 2023 in its initial
7  disclosures. Dkt. # 17 at 5. Milliman further argues that amendment would be futile, as
8  Plaintiff's theory of liability rests on the incorrect assertion that Evernorth is a CRA. *Id.*
9  at 6. In his Reply, Plaintiff asserts that Evernorth is acting as a CRA in this case,
10 Milliman lacks standing to argue that Evernorth is not a CRA, and in any event, Milliman
11 did not clearly disclose Evernorth's identity and role in the case in its initial disclosures.
12 Dkt. # 19 at 2. Because the deadline for joinder of parties (such as Evernorth) passed, but
13 the deadline to amend pleadings had not passed at the time, the Court primarily considers
14 Plaintiff's request to join Evernorth as a defendant.

15 Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its
16 pleading only with the opposing party's written consent or the court's leave. The court
17 should freely give leave when justice so requires." Fed. R Civ. P. 15(a).[1] Although Rule
18 15 is applied liberally, *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946,
19 951 (9th Cir. 2006), a district court need not grant leave to amend where there is strong
20 evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated
21 failure to cure deficiencies by amendments previously allowed, undue prejudice to the
22 opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc."

---

[1] The question of whether Rule 15(a) or Rule 16 applies to a motion for leave to amend a complaint depends on whether or not the deadline for amendments in a scheduling order has passed. If the deadline for amendment has passed, the court must use the more stringent "good cause" standard of Rule 16(b), which "primarily considers the diligence of the party seeking amendment." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *see also* Fed. R. Civ. P. 16. Here, while the deadline for joinder of parties passed on August 30, Plaintiff filed the instant motions prior to the November 1 deadline for amended pleadings.

ORDER – 5

*Sonoma Cty. Ass'n of Retired Emp. V. Sonoma Cty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Johnson v. Mammoth Recreations, Inc.*, 9756 F.2d 604, 607 (9th Cir. 1992) ("Under Rule 15(a), leave to amend should be granted as a matter of course, at least until the defendant files a responsive pleading. At that point, leave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay.")

      This is Plaintiff's first request to amend his complaint, and Plaintiff does not appear to be acting in bad faith. The Court, however, questions Plaintiff's explanation as to why he waited over two months since learning of Evernorth's role in this case to seek to add Evernorth as a defendant. In response to Plaintiff's Interrogatory No. 6 seeking the identity of "any vendors, sources, agents, employees, third parties, or independent contractors" that Milliman used to obtain medical record information, Milliman provided the name and address of "Evernorth Intelligence Solutions (ESI)." Dkt. # 18 (Declaration of Jeffery M. Wells ISO Defendant's Response), Ex. B at 4. A July 21 production included Milliman workbooks referencing "ESI" as well. Dkt. # 19 at 3. Even if Plaintiff was unsure of Evernorth's potential role in this case prior to the August 30 deadline for joinder of parties, Plaintiff could have sought an extension at that time. However, beyond the timing of Plaintiff's request, the court must consider whether amendment to join Evernorth would be futile.

      "Futility alone can justify the denial of a motion to amend." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Here, the parties' dispute turns on whether Evernorth is in fact a "consumer reporting agency" that is "regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports," as

ORDER – 6

asserted by Plaintiff in his proposed Amended Complaint. Dkt. #15, Ex. A ¶ 9.

In response to Milliman's assertion that Evernorth is not a CRA, Plaintiff argues that Milliman lacks standing to make such an argument and states that he will address the issue "if and when Evernorth is added as a defendant" and presumably seeks to be dismissed from this action. Dkt. # 19. The Court finds this response inadequate, as Plaintiff is clearly on notice that the viability of his complaint against Evernorth would be a critical issue for this Court to consider, regardless of Milliman's standing to object. Plaintiff's silence on the issue is particularly questionable given that the potential futility of joinder is dispositive as to the issue. *See Buckley*, 356 F.3d at 1077.

"In order to make out a prima facie violation of § 1681e(b), a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information." *Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329 (9th Cir. 1995). The FCRA defines a "consumer reporting agency" as:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f). A "consumer report" is defined as:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for— (A) credit or insurance to be used primarily for personal, family or household purposes; (B) employment purposes; or (C) any other purpose authorized under Section 1681b of this title.

15 U.S.C. § 1681a(d)(1).

Milliman, citing Evernorth's website, argues that Evernorth is not a CRA, but is

ORDER – 7

instead a data broker or data aggregator. Dkt. # 17 at 7. Indeed, Plaintiff characterized the information received by Milliman from Evernorth as simply "data." Dkt. # 15 at 2-3. According to the Federal Trade Commission, data brokers are "companies that collect consumers' personal information and resell or share that information with others[.]" FED. TRADE COMM'N, DATA BROKERS: A CALL FOR TRANSPARENCY AND ACCOUNTABILITY (2014)[2]. Milliman also points out that the Consumer Financial Protection Bureau, the federal agency tasked with "implement[ing] and enforc[ing] Federal consumer financial law," identifies Milliman IntelliScript, but *not* Evernorth, as a CRA. CONSUMER FIN. PROT. BUREAU, LIST OF CONSUMER REPORTING COMPANIES (2023)[3].

Critically, the Ninth Circuit has held that the "FCRA applies to an entity that assembles or evaluates consumer information with the intent to provide a consumer report to third parties." *Zabriskie v. Federal National Mortgage Association*, 940 F.3d 1022, 1027 (9th Cir. 2019). The information before the Court suggests that Evernorth does not intend for the "raw data" furnished to Milliman to constitute a "consumer report." *Id.* (citing *Kidd v. Thomson Reuters Corp.*, 925 F.3d 99, 104 (2d Cir. 2019)) (holding that an entity must show a "specific intent" to furnish a consumer report to qualify as a CRA under the FCRA). Without further evidence that Evernorth's activity in the health data aggregation space constitutes a specific intent to provide a consumer report to Lumico, and absent any argument from Plaintiff in support of the viability of the joinder of Evernorth as a defendant, Plaintiff's request to amend the complaint is **DENIED**.

      **B.**      **Request to Modify Scheduling Order (Dkt. # 16)**

---

[2] Available at: https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf.

[3] Available at: https://files.consumerfinance.gov/f/documents/cfpb_consumer-reporting-companies-list_2023.pdf

ORDER – 8

Plaintiff also seeks to have this court modify the scheduling order, Dkt. # 10, and extend all remaining case deadlines by 90 days. Dkt. # 16 at 3-4. Plaintiff argues that such an extension is prudent to allow Evernorth to be joined and provide the parties a full opportunity to complete discovery. "[A] schedule shall not be modified except upon a showing of good cause and by leave of the district judge…" Fed. R. Civ. P. 16(b). "Mere failure to complete discovery within the timeframe allowed does not constitute good cause for an extension or continuance." LCR 16(b)(6). The decision to modify a case schedule is within the broad discretion of the district court. *Johnson*, 975 F.2d 604, 608 (9th Cir. 1992). The good cause analysis "primarily considers the diligence of the party seeking amendment." *Espinoza v. City of Seattle*, No. C17-1709JLR, 2019 WL 5079950, at *5 (W.D. Wash. October 9, 2019) (quoting *Johnson*, 975 F.2d at 608). Here, Plaintiff sought an extension to the deadline to amend the pleadings prior to the November 1 deadline. Although this Court has denied Plaintiff's request to join Evernorth as a party, it appears that Plaintiff intends to amend the complaint to add a second cause of action against Milliman under 15 U.S.C. § 1681i. Dkt. # 15, Ex. A. To ensure that the parties have sufficient time to complete discovery prior to trial, this Court will **GRANT** a sixty (60) day extension of all remaining deadlines in the parties' scheduling order.

### IV.   CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's motion to amend the complaint to add Evernorth as a defendant. Dkt. # 15. Plaintiff's motion to modify the scheduling order is **GRANTED**, and all dates in the parties' scheduling order will be extended by sixty (60) days. Dkt. # 16.

Dated this 22nd day of November, 2023.

The Honorable Richard A. Jones
United States District Judge

ORDER – 9